# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| BRANDI THOMAS, Individually and on Behalf of All Others Similarly Situated, | Case No.: 19-cv-1804 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **Jury Trial Demanded** |
| CONVERGENT OUTSOURCING INC., | |
| Defendant. | |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Brandi Thomas is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that she engaged in a consumer transaction.

6. Defendant Convergent Outsourcing, Inc. ("COI") is a foreign business corporation with its principal place of business located at 800 Southwest 39th Street, Suite #100, Renton, Washington 98057. Its registered agent in Wisconsin is C T Corporation System, 301 S. Bedford St., Suite 1, Madison, Wisconsin 53703.

7. COI is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. COI is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. COI is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. COI is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about January 28, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as <u>Exhibit A</u>.

12. Upon information and belief, <u>Exhibit A</u> is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

13. Upon information and belief, <u>Exhibit A</u> is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

14. Upon information belief, <u>Exhibit A</u> was the first written communication that Defendant mailed to Plaintiff regarding this alleged debt.

15. Exhibit A contains language that largely reflects the statutory debt validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors send along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

16. Exhibit A also contains the following:

> Date: 01/28/2019
> Creditor: Synchrony Bank
> Client Account #: XXXXXXXXXXXX9370
> Convergent Account #: T-▇▇▇▇2094
> Merchant: Synchrony Home
> 
> Amount Owed:    $1,096.57
> Total Balance:  $1,096.57

Exhibit A.

17. Exhibit A states that the "Creditor" of the debt is "Synchrony Bank," that the "Merchant" of the debt is "Synchrony Home," and that the "Client Account #" ends in 9370.

18. The bottom portion of Exhibit A is a payment remittance slip, which contains the same information:

> Date: 01/28/2019
> Creditor: Synchrony Bank
> Client Account #:    XXXXXXXXXXXX9370
> Convergent Account #: T-▇▇▇▇2094
> Merchant:            Synchrony Home
> Total Balance:       $1,096.57

Exhibit A.

19. Upon information and belief, Exhibit A was mailed in connection with a "Synchrony Home" account, which was used only for personal, family, or household purposes.

20. The reverse side of Exhibit A contains the following:

3

```
                    3 CONVENIENT WAYS TO PAY:
Pay Online: Not Available

Pay by Phone: We offer check by phone, Western Union and debit card. 877-606-6800

Pay by Mail: Send Payments to Convergent Outsourcing, Inc., PO Box 9004, Renton WA 98057-9004
```

Exhibit A.

21. On or about March 16, 2019, Defendant mailed another debt collection letter to Plaintiff regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit B.

22. Upon information and belief, Exhibit B is a form letter, generated by computer and with information specific to Plaintiff inserted by computer.

23. Upon information and belief, Exhibit B is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

24. Upon information and belief, the alleged debt referenced in Exhibit B was the same alleged debt referenced in Exhibit A.

25. Exhibit B contains the following:

```
Date: 03/16/2019
Creditor: Synchrony Bank
Client Account #: XXXXXXXXXXXX8843
Convergent Account #: T-      2094
Merchant: Synchrony Home
        Amount Owed:    $1,096.57
        Total Balance:  $1,096.57
```

Exhibit B.

26. The bottom portion of Exhibit B is a payment remittance slip, which contains the same account information:

4

```
Date: 03/16/2019
Creditor: Synchrony Bank
Client Account #: XXXXXXXXXXXX8843
Convergent Account #: T-▮▮▮▮2094
Merchant:       Synchrony Home
Total Balance:  $1,096.57
```

Exhibit B.

27.     The account information in Exhibit B contradicts the account information in Exhibit A.

28.     Exhibit A purports to collect a "Synchrony Home" account with a "Total Balance" of $1,096.57 with a "Client Account #" ending in 9370.

29.     Exhibit B also purports to collect a "Synchrony Home" account with a "Total Balance" of $1,096.57, but the purported "Client Account #" in Exhibit B ends in 8843.

30.     On the face of Exhibits A and B, it is impossible to determine which account either Exhibit A and/or Exhibit B is attempting to collect.

31.     The unsophisticated consumer is aware that "bad" consumer debts, including past-due credit card accounts, may be sold to third-party debt buyers, often within weeks of the account "charging off."

32.     The unsophisticated consumer is also aware that third-party debt buyers generally assign purchased accounts new account numbers.

33.     The unsophisticated consumer, receiving Exhibits A and B, would be confused and misled as to whether the debt referenced in Exhibits A and B was actually owed to "Synchrony Bank" when Exhibits A and B were mailed.

34.     The unsophisticated consumer would be confused as to whether the "Client Account #" stated in Exhibit B referenced a new account number that was assigned to the debt after it was purchased by a third-party debt buyer after the debt was charged off and accelerated.

5

35. The unsophisticated consumer, receiving Exhibits A and B, would be confused and misled as to the character of the debt and whether it had been sold to a third-party debt buyer.

36. The unsophisticated consumer, receiving Exhibits A and B, would be confused and misled as to the identity of the debt and its creditor.

37. The unsophisticated consumer, receiving Exhibits A and B, would be confused and misled as to whether Exhibits A and B were sent to collect the same account.

38. The reverse side of Exhibit B also contains the following:



Exhibit B.

39. The payment remittance slip on the face of Exhibit B contains the following:

✓ **Select Your Plan:**

☐ **OPPORTUNITY #1 – Spread Your Payments Over 6 Months:**
Enclosed is my payment of $182.76 towards the balance due of $1,096.57.

☐ **OPPORTUNITY #2 – Spread Your Payments Over 12 Months:**
Enclosed is my first payment of $91.38 towards the balance due of $1,096.57.

☐ **OPPORTUNITY #3 – Please Call:**
Please call our office to discuss available options that you may qualify for.

. . .

If Options 1 or 2 Have Been Selected, Please Enter Monthly Payment Date and Amount: _____ $ _____

Exhibit B.

40. The "OPPORTUNITY #1" and "OPPORTUNITY #2" payment plans in Exhibit B are confusing and misleading to the consumer, who would not know whether she was supposed to be making monthly installments in the amount specified for each "OPPORTUNITY" that were towards payment of the debt in full or could enter some other "Monthly Payment Date and Amount" to settle the debt for less than the full balance.

41. Along with the contradictory account information, the confusing payment plans and representations that paying online is "not available" suggests to the consumer that Exhibits A and/or B may be illegitimate.

42. The unsophisticated consumer, receiving Exhibits A and B, would be confused as to whether Exhibits A and B were a scam or whether Defendant was acting legitimately.

43. Plaintiff read Exhibits A and B.

44. Plaintiff was confused and misled by Exhibits A and B.

45. The unsophisticated consumer would be confused by Exhibits A and B.

46. Plaintiff had to spend time and money investigating Exhibits A and B.

47. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits A and B.

### *The FDCPA*

48. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and confusing or inaccurate information about the debt itself or the debt collector is a concrete and particularized injury. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against' and

7

Case 2:19-cv-01804-LA   Filed 12/09/19   Page 7 of 16   Document 1

'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing,*

*LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

49. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

50. Misrepresentations of the character, amount or legal status of any debt and misrepresentations of potential settlement arrangements, injure or risk injury to interests

9

expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

51. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

52. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f generally prohibits any "unfair or unconscionable means to collect or attempt to collect a debt."

55. 15 U.S.C. § 1692g states, in part:

a) Notice of debt; contents

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

> (2) the name of the creditor to whom the debt is owed;

56. The Seventh Circuit has held that a debt collector must state the required disclosures in a non-confusing manner. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000).

57. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692g(a)(2) are the same. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016):

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

58. Likewise, the Seventh Circuit has held that the standards for claims under 15 U.S.C. § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a

letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

### The WCA

59. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

60. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

61. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

62. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

63. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

64. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides

injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

65. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

66. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

67. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

68. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

69. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. <u>Exhibits A and B</u> contain contradictory account information that is inherently false, deceptive, misleading, and confusing to the unsophisticated consumer regarding the character of the debt and the identity of the creditor.

72. <u>Exhibits A and B</u> contain contradictory account information that is inherently false, deceptive, misleading, and confusing to the unsophisticated consumer regarding the legitimacy of the collection effort.

73. Defendant violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(10), and 1692g(a)(2).

## COUNT II – WCA

74. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75. Defendant is licensed as a collection agency by the Division of Banking in the Wisconsin Department of Financial Institutions.

76. <u>Exhibits A and B</u> contain contradictory account information that is inherently false, deceptive, misleading, and confusing to the unsophisticated consumer regarding the character of the debt and the identity of the creditor.

77. <u>Exhibits A and B</u> contain contradictory account information that is inherently false, deceptive, misleading, and confusing to the unsophisticated consumer regarding the legitimacy of the collection effort.

78. <u>Exhibits A and/or B</u> violate the FDCPA.

79. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

80. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters in the form represented by Exhibits A and B to the Complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the "Client Account #" stated in Exhibit B was different from the "Client Account #" stated in Exhibit A, (e) the letter in the form of Exhibit B was mailed between December 9, 2018 and December 9, 2019, inclusive (e) and neither letter was returned by the postal service.

81. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each Class.

82. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

83. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

84. Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

85. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

86. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: December 9, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com